OPINION OF THE COURT
Peter N. Wells, S.
This is a petition by Highgate Manor of Cortland, Inc., claimant herein, to require the above-referenced estate to pay a claim in the amount of $140,299 for health care and rehabilitative services rendered by it to decedent from March 18, 1993 through May 10, 1995 excluding the period from April 17, 1994 *906 through April 28, 1994.* Respondent admits that health care services were rendered but disputes the claimed amount. A . hearing was held on September 5 and September 23, 1996.
The evidence revealed the following. On May 3, 1992 decedent suffered a traumatic brain injury. On March 18, 1993 decedent entered claimant facility for her care and treatment. Respondent, administrator of decedent’s estate and decedent’s spouse, executed a "Head Injury Admission Agreement” as decedent’s representative on March 18, 1993 in which he guaranteed payment of all "fees, charges, and expenses due Highgate Manor” at a daily rate of $457. There is no language in the contract between these parties that specifies that the agreed-upon daily rate is in any way dependent upon insurance coverage.
Decedent’s care at claimant facility was paid in part by the Guardian Insurance Company of Norwell, Massachusetts, for 90 days at the rate of $457 per day. This coverage terminated on July 8, 1993. At that time another of respondent’s insurance carriers, Blue Cross/Blue Shield of Central New York (Blue Cross/Blue Shield), paid claimant from July 9, 1993 through November 26, 1993, a period of 140 days. Notwithstanding its agreed-upon rate with respondent of $457 per day, claimant billed Blue Cross /Blue Shield at a daily rate of $1,278 which this carrier paid pursuant to a purported arrangement between itself and claimant. Nevertheless claimant credited respondent with only $457 per day as opposed to the $1,278 it actually received from Blue Cross /Blue Shield. Allegedly this is a common practice in this type of industry.
Claimant argues that these Blue Cross/Blue Shield payments are not overpayments as Blue Cross/Blue Shield was not a party to the agreement that respondent executed on behalf of decedent. Such argument is ingenuous at best. While it is obvious as claimant asserts that Blue Cross/Blue Shield was not a party to the contract between respondent and claimant, it was respondent’s coverage with Blue Cross/Blue Shield that enabled claimant to collect the $1,278 payments.
Common sense dictates that inasmuch as said payments were pursuant to respondent’s insurance coverage, the total amounts received therefrom must be applied to reduce respondent’s obligation to claimant. Otherwise claimant would receive a windfall of the difference between its agreed daily rate with re *907 spondent and the daily rate received from, respondent’s carrier. In short this determination precludes an unjust enrichment for the provider at the expense of the insured.
Accordingly, the court finds that claimant must credit decedent’s estate $821 per day for each day of decedent’s stay paid for by Blue Cross/Blue Shield for a total credit of $114,940. The court thus finds that claimant has a valid claim against this estate for the balance remaining after crediting the excess paid by Blue Cross/Blue Shield in the amount of $25,359 plus interest thereon at the statutory rate.

 The original claimed amount of $236,726 was reduced through insurance payments subsequent to the hearing on this matter.